*Exceptions overruled.*

All concurred.

---

Rockingham, }
Feb. 6, 1906. }

AYERS, *Ap't,*   v.   LAIGHTON, *Adm'r.*

An administrator who receives the rents and profits of the intestate's realty
during an administration of the estate in the solvent course is not charge-
able therefor upon the settlement of his account with the probate court.

A decree that an estate shall be administered in the insolvent course does not
have such retroactive effect as to render the administrator's previous unau-
thorized management of the intestate's realty an official act for which he
is accountable in the probate court.

Where an estate is decreed to be administered as insolvent, the administrator
is entitled to take possession of and manage the intestate's realty, and is
accountable in the probate court for rents thereof received by him, although
the personal property is sufficient for the liquidation of debts and expenses
of administration.

Where an administrator obtains a decree that the estate be administered as
insolvent and is subsequently called upon to account in the probate court
for his management of the intestate's realty, he is estopped to claim that,
because the estate was in fact solvent, his collection of rents and profits
was a personal and not an official act.

The fact that heirs-at-law fraudulently recommended and procured the
appointment of an unsuitable person as administrator, who subsequently
embezzled funds of the estate, furnishes no reason why a co-administrator,
upon relinquishing the trust, should not account with the administrator *de*
*bonis non* for assets with which he is legally chargeable.

PROBATE APPEAL.   At the April term, 1905, of the superior
court, the appeal was dismissed by *Stone,* J., on the ground that
the reasons assigned therefor were not sufficient, and the appellant
filed a bill of exceptions.

January 24, 1901, the appellant and William J. Mendum, one

of the heirs-at-law of Charles H. Mendum, were appointed admin-
istrators of the latter's estate, giving a joint and several bond.
January 3, 1902, upon petition of the administrators, the estate
was decreed to be administered in the insolvent course. Subse-
quently the defendant was appointed administrator *de bonis non*.
During all the period of their administration the co-administrators
collected the rents of the real estate and paid the taxes, insurance,
and water rates. Mendum embezzled a part of the money received
by him and the plaintiff, and fled; and the account was presented
for settlement by the plaintiff. Upon that accounting, the probate
court charged the plaintiff with the net rents of the real estate
from the beginning of the administration. From this order he
appealed, alleging as reasons for the appeal that a large part of the
sum for which he was charged was for money collected by the
administrators between the date of the grant of administration and
the date of the decree ordering the estate to be settled as insol-
vent; that the estate is not in fact insolvent and will finally prove
to be solvent; that the heirs fraudulently procured the appoint-
ment of Mendum as co-administrator with the plaintiff, knowing
that he was a dishonest man and would probably embezzle the
funds of the estate, and that he did embezzle the same with the
knowledge and assent of the heirs.

*Samuel W. Emery* and *Burnham, Brown, Jones & Warren*, for
the plaintiff.

*Frink, Marvin & Batchelder*, for the defendant.

WALKER, J. The appeal properly presents the question whether
the action of the probate court in charging the plaintiff with the
net income of the real estate received by the administrators, under
the circumstances alleged, can be sustained. The statute provides
that "the administrator shall receive the rents and profits of the
real estate, in case the estate is insolvent, and keep the same in
repair, and account for the net proceeds thereof in his administra-
tion account." P. S., c. 189, s. 13. It is substantially alleged in
the appeal that for nearly a year after the grant of administration
the solvent course of procedure was adopted; that then the estate
was decreed to be administered as insolvent; and that previous to
the date of that decree the administrators had received a large
sum of money as the net income of the real estate, with which sum
the plaintiff is charged in his administration account. If there
had been no decree of insolvency,—in other words, if the estate
had been administered throughout in the solvent course,—it would
not probably be claimed that the administrators would be officially

accountable in the settlement of their probate account for the funds received by them in the management of the real estate. *Lucy* v. *Lucy*, 55 N. H. 9; *Perkins* v. *Perkins*, 58 N. H. 405; *Clough* v. *Clough*, 71 N. H. 412, 418. In such a case their acts in collecting the rents would be deemed merely the acts of individuals,— not of administrators,—for which they might be personally accountable to the heirs in a proper proceeding, but not in the settlement of their administration account. As administrators, they would have no right, since no duty is imposed upon them, to intermeddle with the real estate of the intestate, in the absence of any suggestion of insolvency in the probate court. From this it necessarily results that, until the decree of insolvency was made, their occupation or management of the real estate in question and their collection of the rents cannot be justified as official acts in the administration of the estate. The sureties on their bond are not liable for their dishonest or unfaithful conduct in relation to matters not falling within the sphere of their official duty.

Nor does the subsequent decree in insolvency, under which, ordinarily at least, the administrator is entitled to take possession of the real estate, have such a retroactive effect as to render their previous unauthorized management of the realty an administrative act for which they are accountable in the probate court. "Until the decree of insolvency, the heirs are to be considered as in the rightful possession of the premises. After the decree, the administrator is entitled to the possession; his title commences at the date of the decree. The position that the title of the administrator to the real estate relates back from the decree of insolvency to the death of the intestate . . . would hardly seem to be reasonable, nor is it sustained by the authorities." *Lane* v. *Thompson*, 43 N. H. 320, 325. The ruling, therefore, dismissing the appeal because it does not state sufficient grounds therefor was erroneous.

It is argued further, in behalf of the plaintiff, that upon the facts stated he could not legally be charged with the proceeds of the real estate received after the decree authorizing the estate to be settled in the insolvent method, because, as is alleged in the appeal, the estate will prove to be solvent, the personal property being more than sufficient for the liquidation of the debts and expenses of administration. But it is apparent that the decree gave to the administrators a right to take possession of and to manage the real estate. Their intervention was not without color of right. The rents they received thereafter came rightfully to their hands, and, under the provisions of the statute above quoted, they are accountable "for the net proceeds thereof" in their administration account, "in case the estate is insolvent." Does this mean actual insol-

vency, or does it refer merely to the method adopted when the estate is being settled in the insolvent course? Since any estate, however solvent, may be administered as insolvent (P. S., *c.* 192, *s.* 1), it is argued that when the estate is in fact solvent the administrator cannot officially manage the real estate and collect the rents, though the insolvent course of procedure is authorized by a decree of the probate court. If the debts and expenses of administration do not exceed the value of the personal property, the contention is that the statute does not authorize the administrator to take possession of the real estate, even under a decree of insolvency. The inconvenience and perplexity which would often result from such a construction of the legislative purpose is pointed out by *Ladd*, J., in *Carter* v. *Jackson*, 56 N. H. 364, 373, 374, where he reaches the conclusion that there is " no practicable way in which the statute can be interpreted and applied but to hold that it means what the terms in which it is expressed seem plainly to import, namely, that when a decree is obtained that an estate be administered as insolvent, it is to be administered in the way insolvent estates are administered, and that this has reference to the whole of the estate, real as well as personal. By such a construction the duty of the administrator is made plain, and all conflict and contention between him and the heirs as to whether the estate is actually insolvent or not is avoided." Whether the opposite view entertained by *Cushing*, C. J., in that case is more tenable as an interpretation of the legislative purpose, it is unnecessary to determine. The ground of the decision was, that the decree that the estate be administered as insolvent gave the administrator a *prima facie* right, at least, to the possession of the real estate. And it cannot be doubted, upon the authority of that case and upon principle, that when an estate is administered as insolvent, the administrator, if he takes possession of the real estate claiming to do so in his official capacity, and receives the rents thereof, is *prima facie* justified in so doing. The mere fact that the estate may prove to be solvent does not render his possession wrongful. He cannot be involuntarily made the agent of the heirs, or be held to be a trespasser or bare licensee as against them, simply because he was not able to foresee that the personal property would eventually prove to be more than sufficient for the payment of the debts. In such a case he ought, at least, to have the benefit of a *prima facie* presumption that his entry was rightful, or that the interest of creditors seemed to require an appropriation of the income of the real estate.

But if he is entitled to this protection as an administrative appointee of the probate court, reciprocal justice requires with equal emphasis that he should be estopped to insist, upon the set-

tlement of his account, that he was not acting as administrator in managing the real estate after a decree obtained upon his application that the estate be administered as insolvent.    Having a *prima facie* right to the possession of the real estate, and assuming to act officially in reference thereto, with the presumed knowledge and consent of all parties interested in the estate, he ought not to be allowed to change his position when called upon for an accounting in the probate court, and to subject the heirs to a loss which would be clearly covered by his bond if the estate had been actually insolvent or the debts had exceeded the proceeds of the personal property.    To sustain such a claim would be to legalize a palpable fraud on the unsuspecting heirs.    The plaintiff, therefore, upon the facts alleged in his appeal, is chargeable with the rents collected after the decree authorizing the settlement of the estate in the insolvent method.

The fact, if it be one, that the heirs were guilty of a fraud upon the plaintiff and his sureties in recommending and procuring the appointment of William J. Mendum as co-administrator, in consequence of whose embezzlement of the funds of the estate this controversy arose, furnishes no reason why the plaintiff should not account to the administrator *de bonis non* for the assets of the estate legally chargeable to him.    Whether upon the final accounting, or upon the application for a decree of distribution of the funds remaining among the heirs, or upon other appropriate proceedings, the plaintiff and his sureties will be able to protect themselves against the suggested fraud of the heirs, it is not necessary to determine at this intermediate point in the settlement of the estate.    The settlement of the plaintiff's account is not an adjudication of the absolute right of the heirs to the funds that may finally remain in the hands of the administrator, nor does it conclude the right of the plaintiff and his sureties to redress in some form of procedure for actionable fraud on the part of the heirs. That issue was not determined by the probate decree.

*Exceptions sustained.*

All concurred.