Hillsborough, }
June 3, 1919. }

WILLIAM H. WESTON, *Adm'r & Ex'r, v.* SECOND ORTHODOX
CONGREGATIONAL SOCIETY, *Ap'ee.*

If a power of disposal is conferred by will upon a tenant for life the question
whether he has exercised the power is one of fact.

His exercise of a right to subscribe to additional shares allotted to stock so be-
queathed to him may be evidence of a disposal, if the giving of the right was
a distribution of the capital of the estate.

Where stock is bequeathed for life, the question whether the right to subscribe
to allotted stock representing profits belongs to the life tenant or is such capi-
tal depends upon whether the right represents profits accrued during the life
of the testator or subsequently.

Personal property bequeathed to one for life with a power of disposal reverts to
the estate of the testator, if the legatee die without exercising the power.

It is the duty of the executor or administrator of a deceased executor or trustee to
file an account of his administration, when required.

The collection of rents is no part of the duty of the administrator of a solvent
estate and he cannot be required to account for them as part of his adminis-
tration; his submission of such items in his account does not estop him from
objecting to a decree thereon.

A life tenant with power of disposal who has stock transferred to his own name
for the purpose of his life tenancy and not as a disposal is a trustee thereof.

The right of a residuary legatee attaches only to the residue of the estate after
the payment of debts, expenses and special legacies.

PROBATE APPEAL, by William H. Weston, administrator *de bonis
non,* with the will annexed, of Sarah A. Brown and executor of
Webster C. Brown. Sarah A. Brown died January 10, 1902. Web-
ster C. Brown, her husband, was appointed executor and filed an
inventory but did not settle an account, and an account was filed
for him by Weston. The court approved the decree of the probate
court and the plaintiff excepted. Both parties excepted to sundry
findings of the court. The controversy was before the court in
*Weston* v. *Society,* 77 N. H. 576. After that decision the probate
court charged Weston with a balance of $2,861.99 as administrator
of Sarah and charged the estate of Webster C. Brown with certain
securities as the property of the estate of Sarah. The questions were
considered as though the appeal was taken by Weston both as
administrator of Sarah and executor of Webster.

Brown received rent from premises formerly owned by Sarah and
made new leases of the same. He received dividends from banks
in liquidation. He surrendered certificates of stock and took new

certificates in his own name. He sold a government bond and used the money as hereinafter stated.

After Sarah's death one of the corporations, of which the stock was inventoried as part of her estate, increased its capital stock, and issued new stock to which each stockholder was given the right to subscribe in proportion to his holdings. Webster C. Brown, in the exercise of his right to the shares of this stock which he had transferred as executor of his wife's will to his own name, subscribed to and paid for certain shares of the stock at the price named in the above offer to the stockholders. Thereupon the certificate was issued to him in his name and remained without change until his death, he receiving the dividends therefor. The payment was made with funds obtained from the sale of the government bond which had been inventoried as part of Sarah's estate, and with other moneys derived by him therefrom.

Upon all the evidence bearing upon the question whether Brown's transactions in regard to the stocks and their transfer to his own name was a disposal under the power conferred by Sarah's will, the court affirmed the finding of the probate court that there was no such disposal and decreed that the stocks should be transferred to the appellee, the residuary legatee under the will of Sarah Brown.

Transferred by *Branch*, J., from the May term, 1918, of the superior court.

*George W. Clyde, Martin & Howe* and *Warren, Howe & Wilson* (*Mr. Howe* orally), for the plaintiff.

*George B. French* (by brief and orally), for the defendant.

PARSONS, C. J. Weston, administrator *de bonis non* of Sarah's estate, was Webster's official successor in the trust, and entitled to receive whatever of the estate remained in Webster's hands on the settlement of his account, *Prescott* v. *Farmer*, 59 N. H. 90, and may recover such balance in a suit upon the probate bond. *Judge of Probate* v. *Heydock*, 8 N. H. 491, 497, 498.

Personal property bequeathed to one for life with power to appoint, at the decease of the legatee without executing the power belongs to the administrator of the testator. *Varrell* v. *Wendell*, 20 N. H. 431. When required, it is the duty of the executor of a deceased executor or trustee to file an account of the administration of his testator. *Gregg* v. *Gregg*, 15 N. H. 190.

It was the duty of Weston executor of Webster to file an account of Webster's administration of his wife's estate. The plaintiff questions the jurisdiction of the probate court to determine the controversy, claiming that the questions must be determined in a suit by Sarah's estate against Webster's. But a suit by Weston administrator against Weston executor is of course unimaginable. The controversy has already been adjudicated. Weston as the representative of the two estates, finding himself in doubt as to which estate property held by him in his representative capacity belonged, brought his petition to the court for a construction of Sarah's will and advice as to his duties in administration. The residuary legatees were made parties so that the petition for advice was in effect a bill of interpleader. Upon an agreed statement of facts it was then adjudicated that the rents of the real estate collected by Weston after the death of Webster belonged to the society and that the property for which Webster should be adjudged chargeable upon settlement of his account should be accounted for by Weston administrator of Sarah, it being admitted that Weston as executor had in his hands the property for which it was claimed Webster executor should be charged. The jurisdiction of the probate court to pass upon the account of Webster's administration and to determine what remained with which he should be charged is too clear for discussion.

Upon the account filed by Weston executor for Webster executor, as allowed, Webster is charged with money collected from savings banks and proceeds of a bond sold; and credited with moneys paid out in the course of administration and disposed of by Brown legatee in an amount equal to the charges, so that of these items no balance remains against the executor. It is difficult to see how this accounting can be objectionable to Brown's estate. It is claimed, however, that the proceeds of the bond should in their entirety be credited as disposed of by Brown under the power in the will. But Brown's right as legatee attached only to the residue of the estate after payment of debts, expenses and special legacies. Whatever disposing power Brown had he could not exercise it until as executor he had administered the estate. So much of the proceeds of the bond as are required to meet the payments necessary to due administration are properly applied thereto, leaving the balance only to pass to Brown as residuary legatee. By doubtless a clerical error, Weston administrator is allowed $16 for Brown's expenses of administration and $150 for Brown's services as executor. Both these items should be taken from the fund Brown had for those purposes. The $16 is

taken out by the court in Brown's account and the $150 should be. The correction does not change Brown's account but reduces Weston's credits by $166. This adjustment will dispose of the society's exception to the allowance of the $150.

The main controversy relates to the ownership of eighteen shares of corporate stock which, inventoried as of the estate of Sarah Brown, Webster soon after his appointment as executor had transferred from certificates in Sarah's name into certificates in his own name, which certificates were found among his papers after his decease. The questions supposed to be involved in this controversy have been voluminously argued in numerous briefs by both parties. As to the greater part of this argument it is sufficient to say (1) the question of fact is not before this court, (2) the exception to the finding of fact made by the trial court raises only the question whether there was any evidence upon which the finding could be made, (3) Mrs. Brown's will has heretofore been construed in *Weston* v. *Society, supra.* Mr. Brown's power in addition to his life estate was to dispose of the property, not merely to take it. Whether the taking shown by the transfer was understood to be a disposition of the property, an exercise of the power of appointment under the will, was the question supposed to be left open in *Weston* v. *Society.*

It is now claimed that Webster as tenant for life under the will was entitled to the possession of the stock and hence that proof of the delivery of the same to him shown by the transfer discharges him as executor. The appellant so makes up the account in his brief. If this be so, Webster being entitled to such a transfer as he had without reference to his power of disposing of the property, the transfer is no evidence of disposition, and as there is no evidence of any disposition of the property by Webster except the transfer to himself, the court instead of advising Weston that the transfer did not as matter of law establish Brown's ownership of the property should have advised him that it was no evidence of it and have advised Weston to deliver the stock at once to the society. But Mrs. Brown's will after the gift to her husband continues: "As soon as may be after his decease I direct, and it is my will, that all the remainder of my real and personal estate be given to" the society. This implies an understanding that after her husband's death further administration of her estate would be required and an intention that the property be kept in such shape that it could be turned over to the society by a representative of Sarah. In this situation it was thought, Webster being both executor and legatee, it might be argued the transfer was

intended to take the property out of Sarah's estate. What was intended is a question of fact, and Webster's estate certainly cannot complain of opportunity to show that the property does not belong to Sarah's estate because by what was done it was intended to dispose of the property for Webster's benefit by making it his own. This question has been tried and upon sufficient evidence it has been found it was not intended to take the property out of Mrs. Brown's estate. Mr. Brown's title, therefore, though clear upon the corporate record was in fact that of trustee. Holding the property as trustee to carry out the purposes of Mrs. Brown's will, he is chargeable therefor in his administration account until discharged by a probate decree. *Hayes* v. *Hayes*, 48 N. H. 219, 229. Being held chargeable, perhaps strictly the decree should be that Weston executor transfer the stock to Weston administrator, and that Weston administrator being charged with the stock in his account be discharged by transfer to the society. This would strictly and technically carry out Mrs. Brown's purpose, but such circuity is unnecessary and no objection appears to be taken to the decree directing the transfer direct from Weston executor to the society, if the society is entitled to the stock.

The appellant contends, citing *Weeks* v. *Jewett*, 45 N. H. 540, that the executor after the termination of a life estate cannot recover personal property that has been in the possession of the tenant for life, and that the society must assert its title in a direct proceeding against the party in possession. The absence of right in the administrator to recover the specific chattels in controversy is placed upon the ground in *Weeks* v. *Jewett* that the executor was discharged by the delivery of articles of that description to the tenant for life, there being no evidence a trust was intended. The consequences of such a conclusion and the reasons for an opposite view have already been discussed. The society has already asserted its title in answer to the petition by Weston executor and administrator, and if the position taken by the plaintiff were adopted, relief would be given by advice and order in the original proceeding. The contention in the appellant's last brief that the procedure and limitations as to the prosecution against an administrator of causes of action against the deceased are applicable is disposed of by the fact that the society had no right to the possession of the stock until Webster died and consequently no right of action against him.

Although Weston charged himself with the rents collected in his administration account, it is now objected that that matter is not

within the jurisdiction of the probate court. The objection is well taken. *Mansfield* v. *Holton*, 74 N. H. 417, 422; *Ayers* v. *Laighton*, 73 N. H. 487; *Perkins* v. *Perkins*, 58 N. H. 405; *Lucy* v. *Lucy*, 55 N. H. 9. As the collection of rents is no part of the duty of the administrator of a solvent estate he cannot be required to account for them as part of his administration. As to require him to do so would make his bondsmen liable beyond their bond, the administrator's submission of his collections in his account does not estop him from objecting to the decree made, if he could confer jurisdiction by consent.

If the right to subscribe for additional stock which accrued to certain of the stock during Webster's life tenancy and which he exercised was a division of profits accrued after the life tenancy began, the right belonged to him as life tenant. If, however, the right represented to some extent profits that had accrued during Mrs. Brown's life, so that as between life tenant and remainderman the giving of the right was a distribution of capital, the taking of it by Brown and his use of it to buy new stock in his own name might be evidence of a disposition of so much of the fund for his own benefit.

If the objection is insisted upon, all items relating to the real estate upon both sides of the account will be stricken out and the account corrected as hereinbefore directed.

*Case discharged.*

All concurred.